UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LORRAINE VANZILE

                                        Plaintiffs,

v.

                                                        **COMPLAINT AND**
                                                        **DEMAND FOR**
                                                        **JURY TRIAL**

ABSOLUT AT THREE RIVERS, LLC                    18-CV-_____
and KELLY SMITH, individually

                                        Defendants

        Lorraine VanZile, by her attorney, Stan Matusz, Esq., alleges and avers as

follows:

## NATURE OF CLAIM

1.  This is a proceeding for declaratory relief and monetary damages to:

    redress the deprivation of rights secured to the Plaintiff under the Family

    and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 et seq. ("FMLA"), the

    Americans With Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), and

    the New York Human Rights Law, § 296 N.Y. Executive Law ("NYHRL").

## JURISDICTION & VENUE

2.  The original subject matter jurisdiction of this Court is invoked pursuant to

    28 U.S.C. § 1331, 28 U.S.C. 1343 (3) and (4) conferring original

    jurisdiction upon this Court of any civil action to recover damages or to

    secure equitable relief under any Act of the Congress providing for the

    protection of civil rights; under 28 U.S.C § 1337 conferring jurisdiction of

    any civil action arising under any Act of Congress regulating interstate

commerce; under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and 29 U.S.C. § 2601 et seq. and 42 U.S.C. §12101, et seq.

3.  Pendant jurisdiction of claims arising under the New York Human Rights Law, § 296 N.Y. Executive Law, is also invoked under 28 U.S.C. §1367 because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

4.  Venue is appropriate in the Western District of New York by virtue of 28 U.S.C. § 1391, since the allegations arose in the District, Defendants do business within this District, Defendants employed the Plaintiff in this District, Plaintiff resides in this Districts, and both the corporate and individual Defendants are subject to personal jurisdiction in this District.

5.  Plaintiff has satisfied all applicable administrative prerequisites for filing this action under the ADA and NYHRL, including the timely filing of an EEOC/NYSDHR Charge on October 17, 2017 (Charge No.: 525-2018-00058), the receipt of a "Right to Sue Letter" on February 6, 2018, and the filing of the instant Complaint with 90 days of the latter.

## PARTIES

6.  Plaintiff Lorraine VanZile is a resident of the State of New York, residing at 7 Speer Drive, Corning, NY 14870 in Steuben County.  Ms. VanZile was employed by Defendants at a nursing home in Painted Post, NY from approximately August, 2012 until her termination on July 21, 2017.

Plaintiff and was an "employee" of Defendants, as defined under the FMLA, ADA and NYHRL.

7. Defendant, Absolut at Three Rivers LLC, is a New York Limited Liability Company with a principal office located at 300 Gleed Avenue, East Aurora, NY 14052. Defendant operates multiple nursing home facilities, including the facility located in Painted Post, NY where Plaintiff was employed.

8. Defendant, Kelly Smith, during the pertinent time frame leading up to the events in this Complaint, was Defendant's Director of Nursing.

9. Defendants engage in a business that employed Plaintiff, within the definitions of both the FMLA and ADA.

## **FACTUAL BACKGROUND**

10. Ms. VanZile was hired by Defendant Absolut in August 2012, as "Activities Director." During the entire duration of her employment with Defendant, her work performance was never in question, and she routinely received praise for the same.

11. In late 2016 and early 2017, Ms. VanZile began experiencing several different physical issues. In early June 2017, Ms. VanZile's health deteriorated markedly and she began experiencing dangerously high blood pressure, dizziness, nausea and chronic vomiting. On some days, Plaintiff could not stand, concentrate, eat, walk, breathe, remain conscious or perform work. Ms. VanZile's physician preliminarily diagnosed the underlying source of these medical conditions as a pulmonary condition.

12. On June 5, 2017, Ms. VanZile advised Joseph Tolpa, Defendant's Administrator, that she needed to apply for intermittent leave under the FMLA to care for her medical conditions and receive treatment. On that same day, VanZile also spoke to Pam Biasi, Respondent's HR Director, to request FMLA paperwork. Oddly, Ms. Biasi told Ms. VanZile that Respondent *"did not have any FMLA forms."* Ms. VanZile found that response to be confusing given the size of Defendant and the fact that it had multiple facilities throughout the state.

13. During the ensuing weeks, Ms. VanZile's physical issues were unremedied and worsening. However, Defendant did not furnish her with any of the FMLA forms she requested.

14. On June 29, 2017, VanZile met with her physician, Kathleen Hallinan, MD. When she told Dr. Hallinan that Defendant had still not provided her with any FMLA forms, Dr. Hallinan was alarmed and wrote a letter, dated June 29, 2017, requesting that FMLA forms be provided so that Ms. VanZile could undergo medical testing and treatment for her conditions. A copy of the letter is annexed to this Complaint as **Exhibit A**. Ms. VanZile gave a copy of her physician's letter directly to Human Resources on June 29th, and she also told Mr. Tolpa about the same.

15. A few days later, Ms. VanZile also notified Kelly Smith, Defendant's Director of Nursing, of her need for FMLA leave. Ms. Smith had just stepped-in for Mr. Tolpa as Ms. VanZile's immediate supervisor. Ms. VanZile informed Ms. Smith of her dangerous blood pressure levels. In

fact, Defendant's own nursing staff had been checking Ms. VanZile's blood pressure at work for several weeks and confirmed it was at dangerously high levels.  When VanZile informed Smith of her need for FMLA leave, Ms. Smith rolled her eyes at Ms. VanZile.  VanZile was stunned by Smith's unprofessional reaction.

16. Over the course of the next (3) three weeks, Ms. VanZile's health deteriorated further, and Ms. Smith's treatment toward her changed markedly.  Smith and VanZile had worked for many years together without incident.  Yet after VanZile told Smith of her need for FMLA leave, Smith would roll her eyes when Ms. VanZile spoke up in meetings.  Smith would also make critical and unwarranted comments about VanZile in front of others.

17. On the weekend of July 15 & 16, Ms. VanZile's blood pressure was dangerously high and she was vomiting.  She had arranged to take off from work on Monday, July 17th, by using one of her vacation days.  On the evening of that same day (the 17th), Ms. VanZile received a call from Defendant's receptionist, who advised her that the New York Department of Health was at the Defendant's facility for a survey.  Ms. VanZile explained to the receptionist that she was *"very sick."*  The receptionist responded: *"you know this is not up for debate."*

18. Ms. VanZile reported to work at around 6:40pm the night of July 17th despite the fact that she was extremely ill.  At work, she was nauseous to the point where she was vomiting in the bathroom.  While Ms. VanZile was

in the bathroom throwing up, Ms. Smith came in screaming: *"Lorrie, where are you!?!"* VanZile was startled. It turned out Defendant Smith was yelling because she could not find a pizza pan. Smith wanted to eat pizza on her ride home from work.

19. Astonishingly, and despite the letter from Ms. VanZile's physician, Defendant had still not provided Plaintiff with any FMLA leave paperwork as of July 17th.

20. On Tuesday, July 18, 2017, Ms. VanZile was once again extremely ill with the same symptoms, but still managed to report to work at 7:00 am.

21. Ms. VanZile did the same on Wednesday, July 19th, despite the fact that she was gravely ill and should not have been working. She reported to work on those days because Defendants had not provided her with FMLA paperwork and because of Ms. Smith's escalating hostile behavior toward her made her concerned about taking a leave unilaterally.

22. Later on Wednesday, July 19th, Defendant Smith called VanZile into a meeting. She began shouting: *"Activity sucks!"* *"you [Vanzile] suck,"* and *"my [Smith's] ass is on fire and you can't do anything about it because you are an idiot!"* VanZile was stunned by Smith's tirade. VanZile calmly replied that she would give whatever documentation Ms. Smith needed to help her with the state.

23. On Thursday, July 20, 2017, Defendants had still not provided Ms. VanZile with any FMLA paperwork. On that same day, she once again reported to work at 7:00 am even though she was extremely ill with the same

symptoms described above.  That day, Ms. VanZile spoke directly to the state's investigator.  The investigator praised Ms. VanZile, saying: *"I think you are doing a great job here."*  The state investigator also said that Defendant's Activities department *"did a lot more than many other facilities"* and that she *"was impressed."*  Ms. VanZile relayed the content of this conversation to Joe Tolpa, Kelly Smith and Pam Hopkins (QA Nurse).

24. Ms. VanZile again reported to work on Friday, July 21, 2017.  Once again, she was still experiencing severe blood pressure issues and constant nausea.  As of that morning, she had still not received any FMLA paperwork from Defendant.

25. That same day (the 21st), Defendant Smith called Ms. VanZile in to a meeting with Smith and Cindy Hood (Assistant Director of Nursing). Defendant Smith again screamed at Ms. VanZile and called her an *"idiot"* and *"incompetent."*   Smith then said: *"The state said you did a horrible job."*  When VanZile began to protest the truth of what Smith was saying, Smith yelled: *"Drop your badge and get the fuck out of my building!"*

26. Ms. VanZile left work and returned home that very same day (July 21, 2017).  When she arrived home, she found the FMLA paperwork from Defendant's Corporate Office in her mail box.  Defendant had mailed the FMLA paperwork to her home address rather than giving it to her at work. The FMLA paperwork was dated July 17, 2017 and falsely stated that Ms.

VanZile requested FMLA leave *"on or about July 17, 2017."* A copy of the FMLA paperwork is annexed to this Complaint as **Exhibit B**.

27. The FMLA paperwork arrived forty-six (46) days after Plaintiff had first requested leave and hours after she was terminated by Defendant.

28. Shortly after her termination, Ms. VanZile learned that Defendant Kelly Smith was overheard talking about her on Thursday, July 20th -- the day prior to her termination. Defendant Smith described Ms. VanZile as *"a crazy lunatic and has too many issues."*

29. Just weeks before Ms. VanZile was fired, she had personally overheard Defendant Smith talking about a fired LPN's mental health in a disparaging way.

30. Plaintiff VanZile never had any issues with Ms. Smith, performance-wise or personally, until she disclosed her medical condition and need for intermittent FMLA leave and reasonable accommodation under the ADA and NYHRL.

31. The purported explanation for Ms. VanZile's termination was false and a pretext for retaliating against her for the exercise of her rights under the FMLA, ADA and NYHRL. Defendant Smith lied when she claimed the state said Ms. VanZile had done a horrible job. The state's records demonstrate this fact.

32. The actions of Defendants caused Ms. VanZile significant and documented physical and emotional damage that required treatment and

counseling during the time that Defendants were interfering with her effort to seek FMLA leave an accommodation.

33. Defendants' discriminatory and retaliatory firing of Ms. VanZile caused additional and significant physical and emotional damage that required treatment and counseling, post-termination.

34. Ms. VanZile also sustained a lengthy period of unemployment, and was unable to obtain comparable employment in her chosen field despite a diligent search. Ultimately, because of the economic strain caused by Defendants' unlawful actions, she was forced to take a position that pays her several less dollars per hour.

35. Defendants' actions were deliberate, willful, and designed to harm Ms. VanZile.

36. Indeed, Defendants willfully refused to allow Ms. VanZile to care for her serious health condition in the hope that Ms. VanZile would become too ill to work and/or would quit.

37. Defendant Smith's egregious actions make her subject to individual liability under the ADA, FMLA and New York Human Rights Law.

**AS AND FOR A FIRST CLAIM:  FMLA RETALIATION**

38. Plaintiff realleges the above paragraphs as if fully restated herein.

39. Plaintiff was an employer of Defendants for over one year and worked greater than 1,250 hours in the twelve month period prior to her request for FMLA leave.

40. Defendant Absolut is an entity that engages in commerce or an industry affecting commerce as defined by 29 U.S.C. § 2611(4)(A), and employs more than 50 employees within 75 miles of plaintiff's former worksite.

41. Plaintiff VanZile suffered from a serious medical condition, requested intermittent FMLA leave because of that serious health condition, and was entitled to take FMLA leave because of that condition.

42. Plaintiff exercised her FMLA rights by giving notice to the Defendants of her need to take FMLA leave.

43. Defendants terminated plaintiff within weeks of the request for FMLA leave after deliberately stalling, obstructing and interfering with her request for FMLA leave.  The termination occurred under circumstances giving rise to an inference of retaliatory intent.

44. Defendants' purported explanation given for Plaintiff's termination was pretextual, and masked a willful attempt to retaliate against Ms. VanZile based on her attempt to exercise of her FMLA rights.

45. Alternatively, plaintiff's request for FMLA leave was a motivating factor in Defendants' decision to fire her.

46. As a direct and proximate result of the retaliatory conduct in violation of the FMLA, Ms. VanZile suffered (and continues to suffer) from physical injury, mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to monetary damages and other relief.

47. As a direct and proximate result of Defendants' unlawful acts, plaintiff suffered the loss of her job, wages, and benefits.

48. The foregoing conduct of Defendants constitutes willful violations of the FMLA for which Plaintiff is entitled to an additional amount as liquidated damages.

49. Plaintiff is also entitled to reasonable attorneys' fees, costs and disbursements of this action, and further legal and equitable relief as may be appropriate under the FMLA.

### AS AND FOR A SECOND CLAIM: FMLA INTERFERENCE

50. Plaintiff realleges the above paragraphs as if fully restated herein.

51. Plaintiff realleges the above paragraphs as if fully restated herein.

52. Plaintiff was an employee of Defendants for over one year and worked greater than 1,250 hours in the twelve month period prior to her request for FMLA leave.

53. Defendant Absolut is an entity that engages in commerce or an industry affecting commerce as defined by 29 U.S.C. § 2611(4)(A), and employs more than 50 employees within 75 miles of plaintiff's former worksite.

54. Plaintiff VanZile suffered from a serious medical condition, requested intermittent FMLA leave because of that serious health condition, and was entitled to take FMLA leave because of that condition.

55. Plaintiff VanZile gave notice of her right to take FMLA leave.

56. As a direct and proximate result of her request for FMLA, Defendants willfully interfered with plaintiffs' request for FMLA leave by, among other things, failing to ask plaintiff for certification within a timely fashion.

57. Plaintiff was prejudiced by Defendants' delay and processing of her FMLA leave request.  As a direct and proximate result of the interference with her FMLA rights, Ms. VanZile suffered exacerbated physical injuries, mental anguish, emotional distress, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to monetary damages and other relief.

58. As a direct and proximate result of the unlawful interference with her FMLA rights, Ms. VanZile suffered economic harm for which she is entitled to back pay, reinstatement and/or front pay, and other relief.

59. The interference with Plaintiffs' FMLA rights was a willful violation of the FMLA for which Plaintiff is entitled to an additional amount as liquidated (double) damages.

60. Plaintiff is also entitled to reasonable attorneys' fees, costs and disbursements of this action, and further legal and equitable relief as may be appropriate under the FMLA.

## AS AND FOR A THIRD CAUSE OF ACTION: ADA - FAILURE TO PROVIDE REASONABLE ACCOMMODATION

61. Plaintiff realleges the above paragraphs as if fully restated herein.

62. Plaintiff was an employee of Defendants under the ADA.

63. Defendant Absolut is a covered entity as defined by 42 U.S.C. § 12111(2).

64. Plaintiff had medical impairments that substantially limited her major life activities and rendered her a qualified individual with a disability entitled to protection under the ADA, as defined by 42 U.S.C. § 12102(2) and 42 U.S.C. § 12111(8).

65. Plaintiff's request for intermittent FMLA leave triggered a concurrent request for reasonable accommodation under the ADA.  Specifically, a request for intermittent FMLA leave is a *per se* reasonable accommodation under the ADA.

66. Plaintiff was able to perform the essential functions of her job with reasonable accommodation.

67. Defendants' blatant refusal to grant or consider Plaintiff's request for reasonable accommodation violated the ADA.

68. As a direct and proximate result of the Defendants' failure to provide reasonable accommodation, Ms. VanZile's medical condition was exacerbated, and she suffered physical injury, mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to monetary damages and other relief.

69. As a direct and proximate result of Defendants' refusal to provide her with reasonable accommodation under the ADA, Ms. VanZile suffered, and continues to suffer, economic harm for which she is entitled to back pay, reinstatement and/or front pay, lost benefits, and other economic relief.

70. The foregoing conduct of Defendants constitutes willful violations of the ADA for which Plaintiff is entitled to an additional amount as punitive damages.

71. Plaintiff is also entitled to reasonable attorneys' fees, costs and disbursements of this action, and further legal and equitable relief as may be appropriate under the ADA.

## AS AND FOR A FOURTH CAUSE OF ACTION: ADA (FAILURE TO ENGAGE IN INTERACTIVE PROCESS)

72. Plaintiff realleges the above paragraphs as if fully restated herein.

73. Plaintiff was an employee of Defendants under the ADA.

74. Defendant Absolut is a covered entity as defined by 42 U.S.C. § 12111(2).

75. Plaintiff had medical impairments that substantially limited her major life activities and rendered her a qualified individual with a disability entitled to protection under the ADA, as defined by 42 U.S.C. § 12102(2) and 42 U.S.C. § 12111(8).

76. Plaintiff's request for intermittent FMLA leave triggered a concurrent request for reasonable accommodation under the ADA. Specifically, a

request for intermittent FMLA leave is a *per se* reasonable accommodation under the ADA.

77. Plaintiff was able to perform the essential functions of her job with reasonable accommodation.

78. Plaintiff's request for medical leave trigged an obligation on the part of Defendants to engage in an interactive process with Ms. VanZile to determine a reasonable accommodation that would allow Plaintiff to continue working while receiving medical care.

79. Defendants engaged in no interactive process whatsoever with respect to Ms. VanZile, in blatant violation of the ADA.

80. As a direct and proximate result of the Defendants' failure to engage in the interactive process required by the ADA, Ms. VanZile's medical condition was exacerbated. She suffered physical injury, mental anguish and emotional distress. Ms. VanZile also suffered depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to monetary damages and other relief.

81. As a direct and proximate result of Defendants' refusal to provide her with reasonable accommodation under the ADA, Ms. VanZile suffered, and continues to suffer, economic harm for which she is entitled to back pay, reinstatement and/or front pay, lost benefits, and other economic relief.

82. The foregoing conduct of Defendants constituted willful violations of the ADA for which Plaintiff is entitled to an additional amount as punitive damages.

83. Plaintiff is also entitled to reasonable attorneys' fees, costs and disbursements of this action, and further legal and equitable relief as may be appropriate under the ADA.

## AS AND FOR A FIFTH CAUSE OF ACTION: ADA DISPARATE TREATMENT

84. Plaintiff realleges the above paragraphs as if fully restated herein.

85. Plaintiff was an employee of Defendants under the ADA.

86. Defendant Absolut is a covered entity as defined by 42 U.S.C. § 12111(2).

87. Plaintiff had medical impairments that substantially limited her major life activities and rendered her a qualified individual with a disability entitled to protection under the ADA, as defined by 42 U.S.C. § 12102(2) and 42 U.S.C. § 12111(8).

88. Defendants discriminated against Ms. VanZile on the basis of her disability by harassing her, denying her accommodation, thwarting her request for FMLA leave, and terminating her employment.

89. As a direct and proximate result of the Defendants' violation of the ADA, Ms. VanZile suffered physical injury, mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-

confidence, and emotional pain and suffering for which she is entitled to monetary damages and other relief.

90. As a direct and proximate result of the unlawful conduct in violation of the ADA, Ms. VanZile suffered, and continues to suffer, economic harm for which she is entitled to back pay, reinstatement and/or front pay, and other relief.

91. The foregoing conduct of Defendants constitutes willful violations of the ADA for which Plaintiff is entitled to punitive damages.

92. Plaintiff is also entitled to reasonable attorneys' fees, costs and disbursements of this action, and further legal and equitable relief as may be appropriate under the ADA.

## AS AND FOR A SIXTH CAUSE OF ACTION: DISABILITY DISCRIMINATION (NEW YORK HUMAN RIGHTS LAW)

93. Plaintiff realleges the above paragraphs as if fully restated herein.

94. Plaintiff has a disability as defined by the provisions of the New York Executive Law, Section 292 ("NYHRL").

95. Defendant was Plaintiff's employer for purposes of the NYHRL.

96. Defendants discriminated against Plaintiff on the basis of her disability by harassing her, denying her accommodation, thwarting her request for FMLA leave, and terminating her employment.

97. As a direct and proximate result of the Defendants' violation of the NYHRL, Ms. VanZile suffered physical injury, mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to monetary damages and other relief.

98. As a direct and proximate result of the unlawful conduct in violation of the NYHRL, Ms. VanZile suffered, and continues to suffer, economic harm for which she is entitled to back pay, reinstatement and/or front pay, and other relief.

99. The foregoing conduct of Defendants constitutes willful violations of the NYHRL for which Plaintiff is entitled to an additional amount as punitive damages.

100.    Plaintiff is also entitled to reasonable attorneys' fees, costs and disbursements of this action, and further legal and equitable relief as may be appropriate under the NYHRL.

## AS AND FOR A SEVENTH CAUSE OF ACTION: NYHRL (FAILURE TO PROVIDE REASONABLE ACCOMMODATION)

101.    Plaintiff realleges the above paragraphs as if fully restated herein.

102.    Plaintiff was a qualified individual with a disability under the NYHRL.

103.     Plaintiff's request for intermittent FMLA leave triggered a concurrent request for intermittent absences as a reasonable accommodation under the NYHRL.

104.     Defendant's refusal to grant or consider Plaintiff's request for accommodation violated the NYHRL.

105.     As a direct and proximate result of the Defendants' violation of the NYHRL, Ms. VanZile's medical condition was exacerbated.  She suffered physical injury, mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to monetary damages and other relief.

106.     Plaintiff is also entitled to reasonable attorneys' fees, costs and disbursements of this action, and further legal and equitable relief as may be appropriate under the NYHRL.

## AS AND FOR AN EIGHTH CAUSE OF ACTION: FMLA INDIVIDUAL LIABILITY FOR DEFENDANT SMITH

107.     Plaintiff realleges the above paragraphs as if fully restated herein.

108.     Defendant Smith, by virtue of her position and actions, is individually, and jointly and severally liable under the FMLA.

## AS AND FOR AN NINTH CAUSE OF ACTION: ADA INDIVIDUAL LIABILITY FOR DEFENDANT SMITH

109.    Plaintiff realleges the above paragraphs as if fully restated herein.

110.    Defendant Smith, by virtue of her position and actions, is individually and  jointly and severally liable under the ADA.

## AS AND FOR AN TENTH CAUSE OF ACTION: NYHRL INDIVIDUAL LIABILITY FOR DEFENDANT SMITH

111.    Plaintiff realleges the above paragraphs as if fully restated herein.

112.    Defendant Smith, by virtue of her position and actions, is individually, and jointly and severally liable under the NYHRL.

## TRIAL BY JURY

113.    Plaintiff demands a trial by jury on all claims properly triable by a jury.

**WHEREFORE**, the Plaintiff respectfully requests that upon trial this Court enter judgment against Defendants in her favor and be given the following relief:

A.  An award of the value of Plaintiff's lost wages, benefits, bonuses and other monetary losses;

B.  Reinstatement to Plaintiff's former position or front pay;

C.  Compensatory damages;

D.  Liquidated damages;

E.  Punitive damages

F.  An award of reasonable attorneys' fees, expenses, expert fees, disbursements and costs incurred in vindicating the rights of Plaintiff;

G.  An award of pre and post judgment interest;

H.  Granting such additional relief as this Court deems just and proper.


Dated:        Ithaca, New York
              February 26, 2017

                                      /s/Stan Matusz
                                      Stan Matusz, Esq.
                                      *Attorney for Plaintiff*
                                      29 Murfield Drive
                                      Ithaca, NY 14850
                                      Telephone: 607-319-5513
                                      stanmatusz@gmail.com

Name: Lorraine E. Vanzile | DOB: 8/24/1971 | MRN: 741643 | PCP: Angel L Malavet, MD

# Letter Details

 GUTHRIE

Corning Internal Medicine
130 Centerway
Corning NY 14830
Tel 607-973-8000
Fax 607-936-6455

June 29, 2017

LORRAINE E VANZILE
7 SPEER DRIVE
CORNING NY 14830

RE:  Vanzile, Lorraine
BN:  741643
DOB:  8/24/1971

To Whom it May Concern:

I am writing in regard to our patient Lorraine Vanzile, who has multiple medical problems for which she is currently undergoing evaluation.  She requires FMLA forms to be provided to her so that these may be submitted on her behalf.  We would greatly appreciate it if these would be supplied to her at your earliest convenience.  Testing and treatment may require her to be available during work hours.

Please do not hesitate to contact our office if you have any questions in regard to this matter.

Sincerely,

Kathleen Hallinan, MD

 Exhibit A

# ABSOLUT CARE AT HOUGHTO, LLC

*EMPLOYEE BENEFIT ADMINISTRATION OFFICES*
300 Gleed Avenue
East Aurora, NY 14052

Telephone:  (716) 687-2658
Fax:  (716) 687-2758

Date:

**To the Family of:**

Name:  Lorraine Vanzile

Address:  7 Speer Drive
Corning, NY 14830

### Notice of Eligibility and Rights and Responsibilities
### (Family and Medical Leave of Absence)

Dear Lorraine,

I have been notified that you have requested an intermittent leave and are unable to work due to a medical condition for yourself that is expected to qualify for a leave of absence under provisions of The Family and Medical Leave Act. This notice is to inform you that you are eligible for FMLA. Your leave has been approved by your Administrator pending receipt of certification that confirms the reason for absences for the following dates: June 29, 2017 through June 28, 2018. FMLA continues for a maximum of twelve (12) work weeks during any consecutive twelve- (12) month period.

Enclosed are two copies of a *Memorandum* explaining provisions of Family and Medical Leave Act. Please retain one copy for your files. In order for us to determine whether your absence qualifies as FMLA, you must sign and <u>return the second to your Human Resources Director no later than August 2, 2017</u>. Also enclosed is a *Certificate of Health Care Provider*, which must be completed by your provider (physician) and <u>returned to your Human Resources Director no later than August 2, 2017</u>.

You must use any credited vacation and paid personal holidays, as part of the Medical Leave of Absence, prior to being placed on unpaid leave.

While off on leave and not receiving a company paycheck it is your responsibility to maintain your portion of any insurance you may receive through a payroll deduction. During your approved leave which will expire once you have used a total of 12 weeks of FMLA leave, Absolut at Three Rivers will continue to pay the employer portion of your medical and/or dental benefits as if you were actively employed for a total of 12 weeks. Your weekly premiums are as follows: medical insurance $65.79 weekly and dental insurance $5.02 weekly. It is your responsibility to pay these premiums on a weekly basis after your last paycheck has been received. Payments are due on or before each scheduled payday. Please make your check or money order payable to **Absolut at Three Rivers LLC,** and mail to the address above, attn: **Human Resources.** Failure to make timely payments may result in loss of coverage.

Our best wishes for you and your family.

Sincerely,

Exhibit B